# Wheeling.

## WOODYARD, RECEIVER v. POLSLEY et al.

### Decided November 30, 1878.

14 211
36 685

14 211
43 276

14 211
45 624

14 211
46 402
46 467

14 211
47 844

14 211
49 293

1878
Special Term.

14 211
55 589

1. A judgment recovered by a creditor against an administrator is not a lien on the realty of the intestate.

2. Where a suit in equity is brought by a creditor against the personal representative of a decedent, and also against the heirs at law of the intestate, for the purpose of having the personal assets applied to the discharge of the debt, as far as they will go, and to have the real estate of the intestate sold to pay the residue, and the court takes into its own hands the administration of the assets by referring the cause to a commissioner to take an account of the debts of the intestate, the statute of limitations ceases to run against the creditors, not formal parties to the bill, the bill not being in form a creditor's bill from the date of such decree, in such a case,

3. The statute of limitations may be relied on before the commissioner, even where it has not been pleaded before the court prior to the order of reference.

4. If the statute of limitations had not been specially pleaded in the cause, and had not been relied on before the commissioner, and the commissioner failed to recognize the statute, or disregarded it, and no exception was endorsed upon the report for that reason, the Appellate Court will consider the statute of limitations out of the case, although the report upon its face shows, that some of the claims allowed by the commissioner were barred by the statute.

5. Where a commissioner under an order of reference, to state the account of the debts of an intestate, has reported debts, that are *prima facie* barred by the statute of limitations and the report is excepted to for that reason, unless it appear upon the face of the report, or from the evidence before the commis-

1878
Special Term.

Woodyard,
Receiver
v.
Polsley *et al.*

sioner, that the claim had been in some legal mode taken out of the statute, the exceptions should be sustained by the court below, unless for good reason shown the court should re-commit the report to the commissioner to hear proof of such circumstances, as would take the claim out of the statute.

6. It is the duty of the personal representative, to rely upon the statute of limitations in behalf of legatees and distributees, and also to protect creditors.

7. Where a reference has been made to a commissioner to settle the accounts of an intestate, the creditors may appear before the commissioner and contest the claims of each other.

8. Where a suit in equity has been brought by a creditor against the personal representative of an intestate, and also against his heirs at law, to have distribution of the personal assets as far as they will go, and to have the real estate of the intestate sold to pay the residue, and the court orders a reference to a commissioner, to take an account of the debts against the intestate and to settle the administration accounts, and also to ascertain of what real estate the intestate died seized, it is competent for the creditors to appear before the commissioner, and contest the claims of each other, and also to contest such claims on the ground that they are barred by the statute of limitations, and it is the duty of the commissioner to report whether such claims are barred by the statute.

9. In such a case, if a creditor did not before the commissioner rely upon the statute, but after the report has been made, finds upon inspection, that claims have been allowed, which from the face of the report appear to be barred by the statute, he may except to the report on that ground; and unless it appear upon the face of the report, or from evidence before the commissioner, that such claims had been in some legal mode taken out of the operation of the statute, it is the duty of the court to sustain the exception, unless for good cause shown it re-commit the report to the commissioner, with leave to such creditors to show such circumstances as will take their claims out of the statute.

.Appeal from and *supersedeas* to a decree of the circuit court of Kanawha county, rendered on the 13th day of June, 1876, in a cause in chancery in said court then pending, wherein Levi J. Woodyard was plaintiff, and Daniel Polsley, administrator, and others were defendants, awarded on the petitions of James M. Laidley and Daniel Polsley.

1878
Special Term.

Woodyard,
Receiver
v.
Polsley et al.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

Johnson, Judge, furnishes the following statement of the case:

A suit in chancery was brought in 1867 by the plaintiff against the administrator of J. J. Polsley, deceased, and against his heirs at law, to enforce, as claimed, a judgment lien against the real estate of said Polsley, if the personal assets should be insufficient to pay the same. The judgment was recovered by said Woodyard, receiver of the circuit court of Kanawha county, against the administrator of said Polsley, deceased. The amount was $2,500.00, with interest. The judgment was founded on a note or bond, signed by said J. J. Polsley and also by John Slack Jr., his surety. No judgment was recovered against Slack.

The suit in chancery has brought to June rules, 1867. No decree appears in the record showing, when the cause was referred to a commissioner; but it was previous to the 13th day of October, 1868, as on that day a decree was entered in the cause, recommitting the commissioner's report to commissioner Burlew, after sustaining certain exceptions; and by said decree the commissioner was directed to re-state the account, and to require of simple contract creditors strict legal proof of their claims, and to report, "whether there were any judgments, or other liens on the real estate of intestate at the time of his death * * and whether any of the creditors are entitled to priority in the payment of their claims, and that he also report the balance, if any, in the hands of the administrator unadministered."

On the 1st day of July, 1869, the cause was heard on the commissioner's report, and exceptions thereto. The exceptions were sustained; and the said report was so amended, that all the claims mentioned thereto were disallowed, except "No. 1, Levi J. Woodyard's judgment interest and costs; claim No. 2, D. Polsley's account and

interest; claim No. 3, D. Polsley's account as assignee and interest;" and said report so amended was confirmed, and the residue of the amount of the personal funds of the estate in the hands of the administrator, after paying the costs of the suit, were ordered to be paid to the creditors, whose claims were allowed by the decree, *pro rata*; and then ordered, that unless the administrator of said estate should within thirty days from the rising of the court pay the residue of said claim, then commissioners, who were thereby appointed, were required to sell the forty-two acres of land, "in the bill and proceedings and report mentioned," &c.

On the 25th day of March, 1870, J. M. Laidley filed his petition, setting up a claim against the estate of J. J. Polsley, deceased, amounting to $750.00 with interest and costs of protest; an order on that day was entered in the cause, allowing said petition to be filed; in which order it is said, "it appearing to the satisfaction of the court, that no distribution has yet been made of the assets arising from the sale of the personal property of the decedent, and that the real estate, of which the said decedent died seized, has not yet been sold, &c., * * * it is further ordered, &c., that the said decree (before entered) be so modified and corrected, as to require said special commissioners to pay to the petitioner, J. M. Laidley, out of the proceeds arising from the sale of said real estate, his *pro rata* share of the $750.00, &c., and that the administrator *de bonis non* pay to said Laidley his *pro rata* share of the personal assets in his hands." &c.

On the 7th day of July, 1870, the commissioners, who were ordered to make sale of the real estate, reported, that they had in pursuance of the decree appointing them sold said property, and that John Slack, Jr., has become the purchaser at the price of $1,500.00. The court confirmed the report on that day, and ordered the commissioners to collect the purchase money and report the same to court.

In May, 1875, a decree was entered in the cause, as

the record shows, "by consent of the parties to the cause by their counsel, in open court," in which it was recited, "it further appearing to the court, that the papers in this cause, including the several reports of commissioner Burlew showing the amount of the debts against the estate of J. J. Polsley and their priorities have been lost and cannot now be found, and that all the debts mentioned in said report, and allowed by the court, are mentioned in decrees heretofore rendered in this cause, but not the amounts of said debts, it is further ordered by the court, that this cause be referred to P. Fontaine, one of the commissioners of this court, to make, state and report, an account, showing the amount of the claims allowed by a a decree rendered at the June term, 1869, (the decree of July 1, 1869) and all claims allowed by any decrees in this cause subsequent thereto."

This was done by commissioner Fontaine. It is unnecessary here to give the amounts thus found.

On the 8th day of November, 1875, the death of James S. Connell, administrator of John J. Polsley, was suggested on the record; and the cause was revived against P. W. Morgan, administrator *de bonis non* of the said J. J. Polsley, who thereafter filed his answer, not to the bill, but to the petition of J. M. Laidley, "to which the complainant replied generally." He claimed in his answer, that the claim of J. M. Laidley set up in his petition was barred by the statute of limitations.

About the same time John Slack, Jr., filed his petition and answer, claiming, that he had, since the rendition of the judgment in favor of the plaintiff, paid to the said plaintiff a large portion of said judgment, and as to so much was entitled to be substituted to the rights of the plaintiffs in the suit, and also contesting the legality of the claims of Daniel Polsley theretofore allowed him; and also contesting the validity of the claim of J. M. Laidley, and claiming, that his was entitled to priority over all the claims, except what was yet due the plaintiff in the suit. He also claimed, that

Laidley's claim was barred by the statute of limitations, and that the money paid by D. Polsley was voluntarily paid by him for John J. Polsley. He prayed, that the decree of July 1, 1879, and March 25, 1875, might be reheard and reversed. It does not appear that any process was issued upon the petition.

It appears from the commissioner's report, that Laidley's claim was a bill of exchange for $750.00, dated November 21, 1866, payable sixty days after date.

Exceptions were filed to the answer of P. W. Morgan, administrator *de bonis non*, and also to that of John Slack, Jr., by J. M. Laidley. Slack, Laidley and Polsley, appeared before commissioner Fontaine and presented their claims.

The report of the commissioner did not show that any of the claims were entitled to priority over the others.

John Slack, Jr., excepted to so much of the original report, as well as the report of commissioner Fontaine, " as only allows to him substitution to the rights of said Woodyard, receiver, in the said fund, or in so far as the same fails to award him the whole of the said fund to the entire exclusion of the claims of D. Polsley, and J. M. Laidley, for the reasons set out in his answer (which has been before shown), and further because it is apparent from the evidence and the record, which were before the commissioner, that neither one of them is entitled in equity to any part of said fund arising from the sale of the intestate's real property, &c."

J. M. Laidley also excepted to the supplemental report, because the claim of Slack was barred by the statute of limitations. It appears, that Slack had paid the plaintiff on the judgment, after the chancery suit had been instituted, the following sums: $700.00 January 10, 1870; $1,000.00 April 6, 1870; $422.57 April 23, 1870; $250.00 July 19; 1874, amount of note dated June 25, 1868, $359.86, and interest thereon $159.41.

Daniel Polsley also filed a petition, about the same time the petition of Slack was filed, insisting upon the claims which had been theretofore allowed.

On the 13th of June, 1876, the court heard the cause upon the papers theretofore read therein, the petition and answer of John Slack, Jr., &c., and on the report and supplemental report of commissoner Fontaine and exceptions thereto ; and upon consideration whereof the court was of opinion, that the claim of J. M. Laidley was barred by the statute of limitations, and that it should not have been decreed to have been paid, when the decree of March 25, 1870, was entered, because at that time there was, as said decree recites, no administrator *de bonis non* of J. J. Polsley, deceased, before the court. The court further was of opinion, and decreed, that the fund should be distributed as follows: First— To pay the claim of complainant ; Second—To pay the claim of John Slack, Jr.; and Third—To pay the amount due the defendant Polsley.

From this decree the defendants, J. M. Laidley, and Daniel Polsley, each appealed.

—————— *Couch*, for appellant Polsley, cited the following authorities :

2 Rob. Prac. 89 ; Code, ch. 130, § 23 ; 8 W. Va. 233; 1 Greenl. on Ev. § 82 .

*James M. Laidley*, appellant, cited the following authorities :

Smith's Lead. Cas. 430 and cases cited ; 47 E. C. L. 447; Free. on Judgments 249 ; *Id.* § 130 ; *Id.*, § 418 ; 18 Gratt. 53.

*C. E. Doddridge*, for appellee, cited the following authorities :

23 Gratt. 419, 420, 424; 6 Barb. (S. C.) 616; 5 Hill 168; Free. on Judgments, § 134; 2 Tuck. Com. 136 ; 8 T. R 610; *Id.* 308; Chit. on Cont. 750 n. ; 2 Dan. Neg. Inst. 542.

1878
Special Term.
Woodyard,
Receiver
v.
Polsley *et al.*

1878
Special Term.
Woodyard,
Receiver
v.
Polsley et a.

JOHNSON, JUDGE, delivered the opinion of the Court:

The general rule is, that when an interlocutory decree is pronounced, settling the principles involved in the issue in the cause, that it should be corrected in the court below upon a petition for a rehearing. *Manion* v. *Fahy*, 11 W. Va. 491, but it may be that more latitude is allowed the court, where there is pending a creditors' suit and the object of the court is to distribute the funds to the parties entitled to receive the same.

The first question to be determined is, as to the correctness of the decree of June 13, 1876. That decree gave the plaintiff priority over Polsley, and disallowed the claim of J. M. Laidley entirely.

The claims of Slack and Polsley stand precisely on the same footing, as to the amount thereof, that Slack had paid. If the claim of the plaintiff was entitled to priority, then so much as Slack had paid of that claim to Woodyard, the receiver, he being bound on the note therefor, he had a right to have paid to him, after Woodyard had received all his money. But did Woodyard have any priority over the other creditors? In the first decree entered in the cause upon the commissioner's report the court decided, that he had not; and the court certainly decided correctly; for Woodyard's judgment was no lien against the lands of the heirs of the debtor, J. J. Polsley. A judgment recovered by a creditor against an administrator is not a lien on the realty of the intestate. *Laidley* v. *Kline*, 8 W. Va. 218. The commissioner's report does not show any lien of any kind against the realty of the intestate, and therefore all the creditors, who are entitled to participate at all, should do so *pro rata*.

Should the claim of J. M. Laidley have been disallowed? The statute of limitations was pleaded against his claim, by the administrator *de bonis non*, in his answer to the bill. Did the statute apply to this claim? In *Harvey's adm'r* v. *Steptoe's adm'r et al.*, 17 Gratt. 289, it was held, that where, in a bill by a creditor against the

1878
Special Term

Woodyard,
Receiver
v.
Polsley et a.

trustee and executor of his debtor to have payment of his debt, and charging the deed to be fraudulent, and voluntary in part, the court makes a decree, directing a commissioner among other things to take an account of the debts of the testator, that the statute of limitations ceased to run against creditors from the date of that decree. Joynes, J. said: "by that decree the court took upon itself the administration of the assets, and it would have restrained those parties from proceeding afterwards by a separate suit to enforce their claim. *Stephenson* v. *Tavenner*, 9 Gratt. 398. The statute of limitations therefore ceased to run against them from the date of that decree. *Sterndale* v. *Hankinson*, 1 Sim. 393." Where therefore a suit in equity is brought by a creditor against the personal representative of a decedent, and also against the heirs at law of the intestate, for the purpose of having the personal assets applied to the discharge of his debt, so far as they will go, and to have the real estate of the intestate sold to pay the residue, and the court takes into its own hands the administration of the assets by referring the cause to a commissioner to take an account of the debts of the intestate, the statute of limitations ceases to run against the creditors, not formal parties to the bill, from the date of such decree.

It is clear from the record in this cause, that J. M. Laidley's claim was not barred by the statute at the date of the first decree of reference, and therefore the court erred in holding that the statute applied thereto.

J. M. Laidley, who was, as we have seen, one of the creditors, excepted to the commissioner's report, and in that exception relied upon the statute of limitations as a bar to the claim of John Slack, Jr. This exception raises the questions: first, can the statute of limitations be relied upon in this mode? and if so, can a *creditor* take advantage of the statute?

It was at first ruled, that as the statute prohibited actions from being brought beyond a certain period from the time, when the cause of action accrued, it was to be

taken as an absolute bar, and operated by its own force and without pleading it. Afterwards the judges were equally divided in opinion on the question. But as the doctrine, when applied to a case, merely because it appeared on the face of the declaration, that the action was commenced beyond the time prescribed by the statute, was seen to be clearly untenable, as the plaintiff might be within some of the various exceptions mentioned in the statute, it was overruled, and has so continued, and the rule established, that the statute must be pleaded. Angell on Lim. 312, and cases cited.

In *Hickman* v. *Stout*, 2 Leigh 6, it was held, that "there is no rule better established, than that one cannot avail himself of the statute of limitations in a suit in equity without pleading it."

In *Hudson* v. *Hudson's adm'r et al.*, 6 Munf. 352, it was held that in a case where it is necessary to plead the act of limitation, it ought, in order to form a bar, to be *specially pleaded* or at least insisted on; that is, the term prescribed by the statute should be *particularly*, if not formally, pleaded, or relied on, to let in the plaintiff to show in his replication, that within that term an original had been sued out, if the fact were so, and thus to avoid the bar.

In *Purcell* v. *Wilson*, 4 Gratt. 16, it was said, that the Act, 1 Rev. Code, ch. 118, § 1, which authorizes the recovery of damages in writs of right, intends such damages as may be recovered in actions of trespass for *mesne profits*. And as from the form of the pleadings the statute of limitations applicable to the *mesne profits* cannot be pleaded, the tenant may give it in evidence at the trial; and the demandant's recovery of *mesne profits* will be for five years next before the bringing the writ of right down to the recovery of the possession. It is a familiar practice in the trials of ejectment cases, for the defendant to rely upon the statute of limitations under the plea of "not guilty," because that is the plea prescribed by the statute.

1878
Special Term.

Woodyard,
Receiver
v.
Polsley et a.

In *Trimyer* v. *Pollard*, 5 Gratt. 460, it was held, that where a defendant does not file the plea of set-off, but files his account and gives notice of set-off, the plaintiff can not reply the statute of limitations; and he is therefore at liberty to rely upon it in evidence.

In *Tazewell* v. *Whittle*, 13 Gratt. 329, it was held, that the plaintiff having stated in his bill, that his debt was evidenced by deed, if it appears in the progress of the cause that it was by parol, the executor may set up the defense of the statute by exception to the commissioner's report.

By our own court in a recent case, *Ogle* v. *Adams*, 12 W. Va. 213, it was held, that when there is a bill filed for partition of lands and for rents and profits thereof by one tenant in common against another, and the statute of limitations of five years is not pleaded as to rents and profits before the court, before or at the time of the order of reference to the commissioner of the court to ascertain the rents and profits, with which the defendant should be charged, and it does not appear, that the defendant relied upon the statute as to such rents and profits before the commissioner, and that the commissioner failed to recognize the statute or disregarded it, the Appellate Court will consider the statute of limitations out of the case.

If the defendant relies upon said statute of limitations as to rents and profits before the commissioner, and the commissioner includes in his report items of rents and profits which accrued more than five years before the commencement of the suit, and with which the defendant should not be charged under the statute of limitations, the defendant may, and should, except to the commissioner's report for that cause, and in this mode bring the report of the commissioner, so far as the same is obnoxious to the said statute, before the court below for adjudication by it. This is the course which should be pursued generally, where it does not appear by the record, that said statute of limitations for five years has been pleaded

Syllabus 3.

1878
Special Term.
Woodyard,
Receiver
v.
Polsley et a.

before the court prior to the order of reference. This authority clearly establishes, that the statute of limitations may be relied on before the commissioner, even where it has not been pleaded before the court prior to the order of reference.

Syllabus 4. If the statute of limitations has not been specially pleaded in the cause, and has not been relied on before the commissioner, and the commissioner failed to recognize the statute or disregarded it, and no exception was endorsed upon the report for that reason, the Appellate Court will consider the statute of limitations out of the case although the report shows upon its face, that some of the claims allowed by the commissioner were barred by the statute.

Syllabu 5. When a commissioner under an order of reference, to state an account of the debts of an intestate, has reported debts, that are *prima facie* barred by the statute of limitations, and the report is excepted to for that reason, unless it appear upon the face of the report, or from evidence before the commissioner, that the claim has been in some legal mode taken out of the statute, the exceptions should be sustained by the court below, unless for good reason shown the court should recommit the report to the commissioner to hear proof of such circumstances as would take the claim out of the statute.

The cases we have been consulting relate to the defendant debtor, or other defendant liable to plaintiff, who has been permitted in various modes to rely upon the statute of limitations.

Syllabus 6. The next enquiry is: Can a *creditor* of an intestate rely upon the statute of limitations, when the personal representative of the decedent fails to do so? It is indeed the duty of the personal representative to rely upon the statute of limitations in behalf of the legatees and distributees and also to protect creditors. *Tunstall et al.* v. *Pollard's adm'r*, 11 Leigh 1.

Sec. 5 of chap. 87 of the Code declares, " if any personal representative, guardian, curator or committee,

1878
Special Term.

Woodyard,
Receiver
v.
Polsley *et a.*

shall pay any debt, the recovery of which could be prevented by reason of illegality of consideration lapse of time or otherwise, knowing the facts by which the same could be so prevented, no credit shall be given therefor."

Judge Story in his first vol. of Eq. Jur. §548, speaking of the decree of reference says: "It directs the master, to take the accounts between the deceased and all his creditors, * * it also directs the master to take an account of all the personal estate of the deceased in the hands of the executor, or administrator, and the same to be applied in payment of the debts and other charges in due course of administration. In all cases of this sort each creditor is entitled to appear before the master, and there, if he chooses, contest the claim of any other creditor, in the same manner as if it were an adversary suit."

In *Feamster* v. *Withrow*, 9 W. Va. 296, it was held, that "when a bill is filed by a grantor in a deed of trust and one of the *cestuis que trust* therein against the trustee and the other *cestui que trust*, and a reference is made by the court, to ascertain and report the amount of the trust debts due and unpaid to each of the trust creditors, each trust creditor interested in the subject, and who is a party, should be allowed to appear before the commissioner, and should be permitted there, if he chooses, to contest the claim of any other creditors, interested in the trust subject, in whole or in part; and such creditors may except to the report of the commissioner for error therein in reporting the debt of such other creditor, and have the ruling, or judgment, of the court upon such exception, and is entitled to appeal therefrom, where there is error in such ruling or judgment."

Haymond, J., in this case, after citing 1 Story Eq., Jur., and the other authorities, said: "It would be strange indeed if the creditors and securities and indorsers in this case should not be allowed to contest the claims of each other, before the commissioner and the

Syllabus 7.

court.   A rule to this effect in equity would certainly operate great injustice, and tend to sustain and promote fraud."

It seems clear, that where a reference has been made to a commissioner to settle the accounts of an intestate, that the creditors may appear before the commissioner, and contest the claims of each other ; but can they rely upon the statute of limitations, which is generally pleaded and relied upon by the defendant alone ? *Clarke* v. *Hogeman,* 13 W. Va. 718.   We do not in this case decide the question, whether the creditors of a living man, when a reference is made to the  master to audit his accounts, can before the commissioner rely upon the statute of limitations to defeat the claims of each  other. But in the case of a deceased debtor, it is made the duty of the personal representative to plead the statute to any claims against his decedent, which are barred, and if for any reason he should fail to do so, ought creditors, whose claims  are  not barred, to be made to suffer by reason of such failure, whether it was caused by collusion or  negligence ?

In *Shewen* v. *Vanderhorst,* 4 Cond.  Eng. Ch. 458, the Lord Chancellor said: "The question here is, when a decree has been pronounced, taking possession of the estate and vesting it in the court for the purpose of distribution, a decree, by which the accounts are directed to be taken, and the assets are to be administered in the master's office, and after which the common law must be altogether silent, whether under these circumstances, if the  objection that the statute  has barred  the remedy be raised against a debt, and in whatsoever way, or by whomsoever, being parties in the suit, be they creditors, or executors, or even volunteers the objection be raised, it must not be  considered fatal ?   And without at present saying, how far the master is himself entitled to set up the objection, I can see no  reason certainly, why it  may not be  competently taken by a creditor, or  volunteer, as well as by the personal representative."

1878
Special Term

Woodyard
Receiver
v.
Polsley et al.

Syllabus 8.

Syllabus 9.

We think, we may safely lay down the following proposition as sustained by the foregoing authority and reason, that where a suit in equity has been brought by a creditor against the personal representative of an intestate, and also against his heirs at law, to have distribution of the personal assets, as far as they go, and to have the real estate of the intestate sold to pay the residue, and the court orders a reference to a commissioner, to take an account of the debts against the intestate, and to settle the administration accounts, and also to ascertain of what real estate the intestate died seized, it is competent for the creditors to appear before the commissioner, and contest the claims of each other, and also contest such claims on the ground that they are barred by the statute of limitations; and it is the duty of the commissioner to report, whether such claims are barred by the statute.

In such a case if a creditor did not before the commissioner rely upon the statute, but after the report has been made, he finds upon inspection that claims have been allowed, which from the face of the report appear to be barred by the statute, he may except to the report on that ground, and unless it appears upon the face of the report, or from the evidence before the commissioner, that such claims had been in some legal mode taken out of the operation of the statute, it is the duty of the cour to sustain the exception; unless for good cause shown it re-commits the report to the commissioner with leave to such creditors to show such circumstances, as will take their claims out of the statute.

J. M. Laidley had therefore the right to make the exception to the report; but it cannot avail him, for the reason that as to the claim of John Slack, Jr., it was not barred, for the reasons heretofore stated; and the exception was properly overruled.

John Slack, Jr., excepted to the report, because the commissioner had allowed the claim of D. Polsley, claiming that they were voluntary payments, and he had no right therefore to have them allowed. These claims

1878
Special Term.

Woodyard,
Receiver
v.
Polsley *et al.*

were audited by commissioner Burlew. There were exceptions to the report, which the record shows were sustained, but it does not appear that there were any exceptions to the accounts of Polsley. It may have appeared by that report, and in the absence of any evidence to the contrary, we presume it did appear, that there was proof of the correctness of those claims; there may have been evidence, that the note was assigned to Polsley, that the check was a loan of money, and that he paid the funeral expenses at the request of the administrator, and not officiously. The report and the evidence accompanying it were lost; and we do not feel authorized now to say, that these accounts were not properly allowed. All the creditors whose claims are reported, should share in the distribution of the assets *pro rata.*

The decree of the circuit court of Kanawha county rendered in this cause on the 13th day of June, 1876, is therefore reversed with costs in favor of the appellants, against the appellee, John Slack, Jr.; and this cause is remanded to the circuit court of Kanawha county, with instructions to cause the personal fund belonging to the estate of John J. Polsley, deceased, and the proceeds of the sale of his real estate, to be collected and distributed to the creditors named in commissioner Fontaine's report according to the principles of this opinion, and further according to the rules governing courts of equity

THE OTHER JUDGES CONCURRED.

DECREE REVERSED AND CAUSE REMANDED.